Richard D. COLEMAN, David J. Berger, Nils K. Brunner, Lawrence J. Fox and Robert E. Sink, Plaintiffs-Appellants,

v.

Mitchell I. GINSBERG, Administrator, Human Resources Administration of the City of New York, Jack R. Goldberg, Commissioner, Department of Social Services of the City of New York, Mario Procaccino, Comptroller of the City of New York, John V. Lindsay, Mayor of the City of New York, and The City of New York, Defendants-Appellees.

No. 587, Docket 33916.

United States Court of Appeals, Second Circuit.

Argued March 18, 1970.

Decided June 22, 1970.

Ernest Fleischman, New York City, (Delson & Gordon, Ralph P. Katz, Martin F. Ganzglass, New York City, on the brief), for plaintiffs-appellants.

Eric J. Byrne, New York City (J. Lee Rankin, Corporation Counsel for the City of New York, Alfred Weinstein, New York City, on the brief), for defendants-appellees.

Before MOORE and FEINBERG, Circuit Judges, and BONSAL, District Judge.*

* Of the Southern District of New York, sitting by designation.

FEINBERG, Circuit Judge:

Five employees of the Department of Social Services of the City of New York appeal from an order of the United States District Court for the Southern District of New York, Milton Pollack, J., dismissing their action under the Civil Rights Act against various New York City officials. The basis of plaintiffs' complaint is that they have been, or will be, subjected to disciplinary action ranging from a fine of $75 to possible discharge, all unconstitutionally imposed. The record furnished by the parties does not provide much information as to what plaintiffs did to provoke the disciplinary action. The complaint alleges as to each plaintiff only that "he participated in a meeting of employees" at a named Social Services Center on a certain date, the places and dates varying with the plaintiffs. The facts of the controversy before us are otherwise clear and undisputed.

Each plaintiff, subsequent to the "meeting" already referred to, was subjected to disciplinary procedures under section 1103–1.0 subd. (2) of the Administrative Code of the City of New York, section 75 of the New York Civil Service Law, McKinney's Consol.Laws, c. 7, and Executive Order No. 427 of the Department of Welfare. Section 1103–1.0 subd. (2) of the Administrative Code empowers the head of an administrative agency, in his discretion, to enforce a fine upon an employee of up to 30 days' pay for misconduct. The section does not state whether an employee is entitled to any kind of hearing.[1] Section 75 of the Civil Service Law provides that permanent civil service employees in the competitive class may not be removed or otherwise subjected to any disciplinary penalty "except for incompetency or misconduct shown after a hearing upon stated charges * * *." The section outlines a procedure for the trial of disciplinary cases. The employee must be furnished a copy of the charges preferred against him; he is given eight days to answer the charges in writing; at the hearing he is permitted to be represented by counsel and to summon witnesses on his own behalf. If an employee is found guilty of the charge he may be punished by reprimand, a fine not exceeding $100, suspension without pay for a period not exceeding two months, demotion in grade and title, or dismissal from the service. Executive Order No. 427 applies the preceding two sections to the Department of Social Services. It provides that the Bureau of Personnel Administration shall inform the employee to be disciplined of the fine assessed under section 1103–1.0 subd. (2) as punishment for his alleged misconduct. The employee is then given the choice of accepting the fine within three days or submitting to a disciplinary hearing under section 75 of the Civil Service Law. If he accepts the fine, it is deemed final. The employee may not request review on the merits but only on the excessiveness of the penalty. Such review of the amount of the fine only is made by appellee Commissioner of the Department of Social Services. If the employee rejects the fine and elects a section 75 hearing, the charges are not necessarily limited to the misconduct for which the fine was contemplated, and the penalty imposed does not necessarily have to correspond to the fine originally set.

Plaintiffs complain that these interlocking procedures deny them a host of constitutional rights. Their principal attack is upon section 1103–1.0 subd. (2). Plaintiffs claim that the section deprives them of due process because it permits a fine for misconduct without prior notice of hearing, because the lack of standards in the section makes it unconstitutionally vague, and because it

---

[1]. Section 1103.–1.0 provides in part:
Except as otherwise provided by law, every head of an agency is empowered:
\* . \* \* \* \*
2. In his discretion to cause deductions to be made from the salaries, compensation or wages of subordinates of such agency, not exceeding thirty days' pay, as a fine for delinquency or misconduct.

allows a criminal penalty for a non-criminal offense; the section allegedly also denies plaintiffs the equal protection of the laws by allowing a fine no private employer could assess, see New York Labor Law, § 193 (McKinney's Consol. Laws, c. 31, Supp. 1969), and subjects them to involuntary servitude. Citing United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), plaintiffs also argue that the entire statutory scheme set forth above is constitutionally infirm because it forces an employee to run the risk of more serious punishment in order to exercise his constitutional right to a hearing. Finally, plaintiffs attack section 75 alone, although not with the same vigor.[2]

Faced with this battery of contentions, Judge Pollack declined to exercise jurisdiction, assuming that it existed. He pointed out that the basic issues also posed constitutional questions under the New York State Constitution and required interpretation of the Administrative Code and the Executive Order, that the employees involved had the "practical availability" of full protection on their claims in the state courts by an Article 78 proceeding, that there were no circumstances calling for federal intervention, and that abstention would "avoid unnecessary and premature constitutional adjudication which might tend otherwise to create friction in federal-state relations by interference with important state functions." Accordingly, he concluded that the case was "an appropriate one for adherence to the federal doctrine of abstention."

Appellants claim that whatever might be the propriety of the abstention doctrine in an ordinary case, it should not be invoked when first amendment rights are involved and being "chilled." However, nothing in the sparse record before us shows that first amendment rights are substantially involved.[3] Moreover, plaintiffs have allowed this case to languish since the operative events in the summer of 1968. The papers in the district court and in this court show a leisurely pace absolutely inconsistent with the claim of pressing need for an injunction because of the "chilling" effect of the proposed discipline on other employees. While plaintiffs rely upon United States v. Jackson, supra, it should be noted that none of them was induced to waive his right to a full hearing under section 75; all five turned down offers of fines under the section 1103–1.0 subd. (2) procedure. Moreover, as appellees point out, an obvious primary issue in the case is whether section 1103–1.0 subd. (2) of the Administrative Code applies to permanent competitive Civil Service employees like plaintiffs; if not, the bulk of the constitutional arguments—although not all—would disappear. This is a basic question of interpretation of state law that should be—and has not been—decided by the state courts.[4] Moreover, what is involved here is the relationship between the state and its own employees, surely a delicate area where a federal court should not intrude unnecessarily. We recognize that use of the abstention doctrine in cases involving alleged civil rights is not encouraged either by the Supreme Court or by us. See Zwickler v. Koota, 389 U.S. 241, 247–252, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Holmes v. New York City Housing Authority, 398 F.2d 262 (2d Cir. 1968); Wright v. McMann, 387 F.2d 519, 524–525 (2d Cir. 1967). However, it has not been completely rejected but has been confined to "narrowly limited special circumstances." Two such "circumstances"

---

2. The claims are that deductions from pay under § 75 give rise to involuntary servitude, deny equal protection of the laws and improperly allow a criminal sanction for non-criminal conduct.

3. Appellants' brief states they were "disciplined as a result of speeches they gave to fellow employees." However, the complaint and the record in this court are both silent as to this.

4. The only authority cited to us is Matter of Nimelman v. Kross, 5 A.D.2d 984, 173 N.Y.S.2d 136 (App.Div. 1st Dep't 1958), in which the point under consideration was neither briefed by the parties nor discussed by the court.

are present here—an unresolved question of state law the decision of which may "avoid or modify" several constitutional questions, and "possible disruption of complex state administrative processes." Zwickler v. Koota, *supra*, 389 U.S. at 248–249, 88 S.Ct. at 396 & n. 11; Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970).

In view of all the circumstances set forth above, we believe that the trial Judge did not abuse his discretion in deciding to abstain in this case. However, the Supreme Court has advised that retention of jurisdiction, rather than outright dismissal of the complaint, is at least the "better practice" ; in a case like this, the district court should retain jurisdiction and simply stay its proceedings pending any determination in the state courts. See Zwickler v. Koota, *supra*, 389 U.S. at 244–245 n. 4, 88 S.Ct. 391; Wright, Federal Courts, 196–200, particularly nn. 19 & 34 (2d ed. 1970). Accordingly, although we affirm the substance of the action of the district court, we reverse the judgment of dismissal and remand the case to the district court so that it may retain jurisdiction.

Reversed and remanded.